**William H. McFADDEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 87–CF–778, 88–CO–440.**

District of Columbia Court of Appeals.

Argued March 18, 1992.
Decided Aug. 14, 1992.

**12**

Gary T. Brown, Washington, D.C., appointed by this court, for appellant.

Julie G. Weidenbruch, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and WAGNER, Associate Judges.

PER CURIAM:

Appellant William McFadden appeals his convictions by a jury on the grounds that the trial judge erred by failing to conduct a pretrial inquiry as required by *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), and that he was denied the effective assistance of counsel at trial.[1] We reverse.[2]

I

On December 20, 1986, appellant and Romone Gabriel, the co-defendant, were arrested while driving in a stolen Volkswagen in Northeast Washington, D.C. Gabriel was driving and appellant was in the back seat. Appellant had his hands on top of a tall grey bag, which contained gold jewelry, personal papers, credit cards, and a wide assortment of other personal property that had been stolen on December 19 and December 20, 1986. Some of the jew-

elry was found in the clothes pockets of appellant and Gabriel. Gabriel was also wearing a stolen dark brown leather jacket.

The defense was alibi. Appellant's father, William H. McFadden, Sr., testified that before appellant's arrest appellant had been working for him, constructing a restaurant in a building at 4th Street and Florida Avenue, Northwest, and that he had seen his son at work on the mornings of December 19 and 20, 1986. On cross-examination Mr. McFadden admitted that although appellant was at work "most of the time" on December 19, he was uncertain how long appellant was at work on December 20.

The co-defendant, Romone Gabriel, called four witnesses. His mother testified that her son was home sick from 1:30 a.m. on December 18, 1986, until the evening of December 20. That evening appellant came to her home driving a Volkswagen, which he had claimed belonged to a friend. Gabriel and appellant gave Gabriel's mother a ride to a party, dropping her off just before midnight. Gloria Pearson, the ex-girlfriend of Gabriel's brother, testified that she saw appellant driving a grey Volkswagen on December 19, 1986, but admitted on cross-examination that she had a "special relationship" with the Gabriel family, and that she had known them for about two years. Two other witnesses, including Gabriel's sister, provided corroborating testimony.

In rebuttal, Corporal Vance McDonald of the D.C. Department of Corrections testified that the visitor's log at the Lorton Reformatory indicated that on Saturday, December 20, 1986, between 8:30 and 11:45 a.m., appellant and Gabriel had visited inmates at Lorton. McDonald's testimony thus contradicted the testimony of appel-

---

1. Appellant was convicted of one count of first degree theft, D.C.Code §§ 22–3811, –3812(a) (1989 Repl.); four counts of receiving stolen property, *id.* §§ 22–3832(a), –3832(c)(1); one count of unauthorized use of a vehicle, *id.* § 22–1801; two counts of destruction of property, *id.* § 22–403, and two counts of second degree burglary, *id.* §§ 22–3811, –3812(b). He was sentenced to consecutive and concurrent terms of imprisonment ranging from one to 12 years.

2. Appellant also appeals from the denial of his motion for a new trial on the ground of newly discovered evidence, but his appeal, No. 88–840, is untimely. The trial judge denied appellant's motion for a new trial in open court on March 1, 1988, and the notice of appeal was not filed until April 15, 1988, thirty-seven days after appellant was sentenced. *See* D.C.App.R. 4(b)(1).

lant's father and Gabriel's mother and sister.[3]

Appellant's *pro se* motion "For New Trial Pursuant to Ineffective Assistance of Counsel, Title 23, Section 110 of the D.C.Code," was denied following evidentiary hearings.[4]

## II

### A.

■ Pursuant to the rule established in *Shepard v. United States*, 533 A.2d 1278, 1286 (D.C.1987), this court consolidated appellant's direct and collateral appeals. Preliminarily, therefore, we must address a question of first impression: should this court review both issues or defer consideration of the *Strickland*[5] issue until the *Monroe–Farrell* issue has been resolved? When a *Monroe/Farrell*[6] claim of pretrial ineffective assistance of counsel, alleged on direct appeal, is joined with a *Strickland* claim of ineffective assistance of counsel at trial, alleged on collateral attack under D.C.Code § 23–110, we conclude for several reasons that this court should rule on the *Monroe–Farrell* claim (direct appeal) before reaching the *Strickland* claim (collateral attack). Therefore, if there is a basis for a *Monroe–Farrell* reversal or remand, this court will not reach the *Strickland* claim. *See Pierce v. United States*, 402 A.2d 1237, 1238 n. 2 (D.C.1979). If this court remands under *Monroe–Farrell*, and the case comes back on appeal, the court will then dispose of the *Monroe–Farrell* issue, assisted by the trial court's findings, before reaching the *Strickland* claim (if necessary).

Any other approach allowing consideration of a *Strickland* issue before resolving a *Monroe–Farrell* issue could result, in some cases, in a *Strickland* affirmance on collateral attack mooting out the *Monroe–Farrell* inquiry on direct appeal. Although conceivably this court could review *Strickland* claims first, thereby accepting—even encouraging—the mooting of *Monroe–Farrell* claims if, as it happened, the defendant received ineffective assistance at trial, to do so would undermine our mandate to carefully and seriously deal with a defendant's pretrial complaint of ineffectiveness of counsel in order to assure competent representation going into trial.

Quite often, this court resolves *Strickland* claims, in the manner suggested by the Supreme Court, by dealing first with the second *Strickland* criterion of "prejudice"—whether the defendant can show a reasonable probability that, but for counsel's alleged unprofessional errors, the result would have been different—without resolving, or even carefully addressing, the first criterion of whether counsel rendered "deficient performance." 466 U.S. at 691–96, 104 S.Ct. at 2066–69. Consequently, it is possible that we could affirm a conviction under a *Strickland* challenge by reference to overwhelming evidence of guilt and thus a lack of prejudice, without much, if any, regard to how effectively counsel prepared for, and conducted, trial. Such an approach would minimize, if not nullify, the importance of pretrial ineffectiveness claims. This court has emphasized that a defendant is entitled to adequate preparation by, and consultation with, counsel, which "often may be a more important element in effective assistance of counsel

**3.** This court affirmed Romone Gabriel's convictions, except for unauthorized use of an automobile, which the court held merged with a conviction for receiving stolen property. *Gabriel v. United States*, No. 87–916 (D.C. May 24, 1990) (Memorandum Opinion and Judgment).

**4.** The trial judge treated the motion as a motion for a new trial based on newly discovered evidence and a motion pursuant to D.C.Code § 23–110. This court dismissed appellant's appeal from the denial of his § 23–110 motion for lack of jurisdiction, the appeal having been untimely filed, without prejudice to appellant's seeking

relief in the trial court. *McFadden v. United States*, No 90–1134. *See Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 124 (D.C.1992) (appeal must be noted within 60–day period where excusable neglect); D.C.App.R. 4(b)(3) (same). Appellant's motion for reconsideration was denied.

**5.** *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**6.** *Farrell v. United States*, 391 A.2d 755, 760 (D.C.1978).

to which a defendant is entitled than the forensic skill exhibited in the courtroom." *Monroe,* supra, 389 A.2d at 819 (quotation omitted).

Theoretically, of course, we could fashion a rule that, before affirming under *Strickland* when *Monroe–Farrell* is at issue, this court would look carefully at the deficiency criteria, including pretrial preparedness issues presented under *Monroe–Farrell,* and make certain that any affirmance based on lack of prejudice pays very careful attention to the quality of defense counsel's representation. But that would inevitably lead to a reverse *Strickland* analysis, distorting the application of Supreme Court doctrine. Heretofore, this court has scrupulously preserved *Monroe–Farrell* rights against erosion by hindsight examination of at-trial performance of counsel. *Monroe* "reject[ed] the argument advanced by the government that we should apply the post trial test [of outcome prejudice] in evaluating the prejudicial impact of error on the disposition of pretrial claims of ineffective assistance of counsel." *Monroe,* 389 A.2d at 821. The court has since reaffirmed that principle, rejecting the government's argument "that counsel's performance at trial may be considered on appeal in assessing whether the trial court's *Monroe–Farrell* error was harmless." *Bass v. United States,* 580 A.2d 669, 672 n. 6 (D.C. 1990). Rather, the court has limited examination of counsel's trial performance to its circumstantial value for the trial court's analysis of *Monroe–Farrell* contentions on remand. In that context—and that context only—the court has noted that "counsel's actual performance at trial will constitute circumstantial evidence on the issue of whether she was adequately prepared before trial." *Nelson v. United States,* 601 A.2d 582, 592 (D.C.1991) (citing *Bass,* supra, 580 A.2d at 672 n. 6).

This court has made clear that pretrial claims of ineffective assistance must be taken seriously in view of "the fundamental interests which the Sixth Amendment seeks to protect...." *Monroe,* 389 A.2d at 819. Indeed, in *Monroe* the court stated that "the [trial] court's omission of meaningful inquiry into appellant's claim ...

would normally constitute reversible error." *Id.* at 822. In *Bass,* 580 A.2d at 672, the court reminded both trial judges and counsel:

> that they must act *before trial* to ensure that defendants are given prompt and sufficient consideration of their *Monroe–Farrell* complaints about their attorneys. If in a given case the judge hesitates or fails to act, then the attorneys—both prosecutor and defense counsel—should press the matter as persuasively as they can, urging that the claims be ventilated fully on the record.... In this way the defendants' rights can be protected, and countless hours of the courts' and the parties' valuable time can be saved (emphasis in original).

In *Bass,* 580 A.2d at 672.

In sum, we conclude that whenever, as here, a *Monroe–Farrell* claim (direct appeal) is joined with a *Strickland* claim (collateral attack)—as is required under *Shepard,* 533 A.2d at 1286—this court must make sure that the *Monroe–Farrell* claim has been definitively resolved before dealing with the *Strickland* inquiry. This may require remanding the record for *Monroe–Farrell* findings or a ruling. Only after the remand results in a trial court ruling will this court deal definitively with the pretrial and post-trial ineffectiveness claims.

### B.

██ We turn to appellant's contention that the trial judge did not make the requisite inquiry under *Monroe,* supra, 389 A.2d at 820. This contention is based on the circumstance that on the day trial was scheduled to begin, appellant's trial counsel advised the trial judge that he had filed a motion for a continuance because he was not ready for trial. Counsel explained that he "ha[d] not spent enough time talking to [appellant]," and that "I have to know before a trial starts what I'm ... going to tell the jury when the trial is over with, and at this point I don't have that." He indicated, further, that the case was difficult because it involved many tactical choices that he

had not yet resolved with appellant, including whether to pursue a motion for severance from his co-defendant,[7] and that there were "some possible witnesses" whom he had "not identified yet." Counsel advised the judge, however, that if forced he could probably be ready the following day.[8] Counsel later stated that appellant "ha[d] mentioned some witnesses whose names I don't have yet." Finally, in response to the trial judge's statement that appellant had not fulfilled his responsibility to cooperate with counsel in identifying witnesses, counsel stated:

> The only problem is ... that some of the witnesses are not really well-known to the defendants. And, of course, the defendant being locked up, there is difficulty in locating them. They're known by physical descriptions, where they hang out, by their names.

The trial judge agreed to postpone the start of the trial until the following morning, and suggested that the parties spend the remainder of the day discussing "disposition" of the case and preparing for trial.

Before the court recessed for the day, however, appellant addressed the trial judge concerning his dissatisfaction with his attorney, and the following exchange took place:

> DEFENDANT MCFADDEN: Between my preliminary hearing and today I have only had one opportunity to speak with [defense counsel], and that was a couple of days ago. I mean I wrote [defense counsel] and I raised certain concerns that I have and he told me that he had not investigated them. He really hasn't been available to me to prepare the defense for this trial. I mean I saw him for a forty-five minute period a couple days ago. That's the first time I have seen him.

THE COURT: You were both in court on status hearing date.[9] At that time you said you were satisfied with [defense counsel's] representation of you.

DEFENDANT MCFADDEN: That was at that time because he indicated to me that he seemed willing to put forth a good faith effort in representing me.

THE COURT: Sounds to me like you don't even know who your witnesses are going to be. I'm sorry Mr. McFadden, we're going to trial and I'm giving [defense counsel] the opportunity to do whatever additional investigation he has for the remainder of this day and we will start the trial tomorrow. He has the weekend to work on it, but we're going to go to trial.

Appellant contends that the trial judge's inquiry into his expression of dissatisfaction with his trial counsel was insufficient to meet the requirements of *Monroe*, supra, 389 A.2d 811, because the trial judge made neither specific inquiries of appellant about the causes of his dissatisfaction with counsel nor the requisite findings of fact on trial counsel's preparedness.

Under *Monroe*, "when a defendant makes a pretrial challenge to the effectiveness of counsel ... the trial court has a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations." 389 A.2d at 820. The requirement of such an inquiry " 'has been reaffirmed by this court on numerous occasions.' " *Nelson*, supra, 601 A.2d at 592 (quoting *Bass*, supra, 580 A.2d at 671). The precise scope of the inquiry will necessarily vary with the circumstances of each case, and thus the exact nature of the inquiry is committed to the sound discretion of the trial judge. *See id.; Farrell*, supra, 391 A.2d at 760. However,

---

7. Defense counsel indicated that he had just learned that appellant had been writing letters to his co-defendant, and stated that "frankly, at this time I just don't know what to do about the letters and what's contained in the letters. I haven't seen the letters."

8. Counsel stated, "[i]f you force me to go to trial, I think we could go to trial. We could probably do it in such a way that the record

would be clean and clear and...." The trial judge responded that he "want[ed] not only the record to be clean and clear but the reality to be clean and clear."

9. The status hearing had taken place approximately one month before the trial was scheduled to begin.

[w]hatever the exact contours of its investigation, the trial court must put to defense counsel (and to the defendant if necessary)—*on the record*—specific questions designed to elicit whether or not the ... criteria of professional competence have been met. It must then make the requisite and appropriate findings of fact *of record* sufficient to permit meaningful appellate review on the issue of the ability and preparedness of counsel to render effective assistance under the prevailing circumstances.

*Monroe,* supra, 389 A.2d at 821 (emphasis in original). The government maintains that the trial judge addressed each of appellant's complaints about his counsel and had no obligation subsequently to determine whether or not appellant was satisfied with counsel.

The record shows that the trial judge was aware that appellant was the source of some of his counsel's difficulty in resolving evidentiary and tactical issues.[10] However, trial counsel repeatedly admitted to the trial judge that he was unprepared for trial. Counsel explained that the "press of other matters" had kept him from preparing for trial, that there were witnesses he had not identified and that he did not know what defenses he would raise nor what he would tell the jury at the end of the trial. He also referred to tactical decisions that had yet to be made. Counsel told the judge that if "forced" to go to trial, he could "probably" be ready by the following day. Yet, when the trial began the following day, the judge made no further inquiries of either trial counsel or appellant regarding their readiness to proceed to trial. In view of trial counsel's own admissions of unpreparedness, the trial judge's preliminary conclusion—made without further inquiry—that appellant, and not his trial counsel, was responsible for not having identified witnesses or fully prepared a defense is unsupported by the record.

In summary, as this court concluded in *Monroe:* "The trial court's action here fell short of its obligation to conduct a proper inquiry. . . . No substantive inquiry was made to elucidate from counsel information to rebut, or substantiate, the specifics of appellant's complaint." 389 A.2d at 821.

### C.

■ Having concluded that the trial court's treatment of appellant's pretrial claim was insufficient, the question remains whether reversal or remand is the proper remedy. We conclude that this is not a case in which a remand would be appropriate, and therefore, we reverse.

Upon close examination of our previous cases, we discern several factors critical to the remand or reverse question. First, we note that *Bass* reaffirms the conclusion in *Matthews v. United States,* 459 A.2d 1063, 1065 (D.C.1983) that either reversal or remand is an appropriate remedy, depending on the circumstances of the case. *Bass,* supra, 580 A.2d at 671. In *Bass,* appellant had notified the trial court three months before trial that she was dissatisfied with her counsel. Because the trial court failed to comply with *Monroe,* and because "it would be unreasonable to ignore any relevant preparation that counsel might have conducted in the three months between the date of Mrs. Bass' letter and the beginning of the trial," this court remanded the case for the trial court to consider the pretrial ineffectiveness claim, placing a clear and convincing evidence burden on the government. *Id.* Similarly, in *Matthews,* the trial judge had proceeded to trial without making the required inquiry after receiving a letter from appellant nearly three weeks before trial. *Matthews,* supra, 459 A.2d at 1064. While recognizing the "strong argument for outright reversal," the court remanded because defense counsel had never been given an opportunity to demonstrate that his or her preparation for trial was adequate. *Id.* at 1065. The court reasoned that a reversal in that case would "risk reversing a judgment of conviction in a

---

**10.** Defense counsel told the trial judge that the co-defendant's counsel had advised him the previous week that appellant had been writing to his co-defendant about making up a story. *See supra* note 7.

case tried after thorough pretrial preparation." *Id.*

In *Farrell,* on the other hand, appellant had complained about counsel to the trial court two days before trial and had moved for appointment of substitute counsel the day of trial. 391 A.2d at 757. After the trial court denied appellant a *Monroe* inquiry, appellant moved to proceed *pro se.* This court reversed appellant's conviction. *Id.* at 762. Although we did not explain why we reversed rather than remanded, it is clear that a lengthy interval between defendant's complaint and trial—critical to the remand decisions in *Bass* and *Matthews*—was not a factor in *Farrell.*

Our most recent decision in this area, *Nelson, supra,* 601 A.2d 582, did not discuss the remand/reversal distinction that the court has established in earlier decisions. In *Nelson,* just before the jury was sworn, the defendant voiced his desire for new counsel because of counsel's inexperience and failure to comply with several of defendant's requests. The trial judge refused to "entertain" the motion, opining that defense counsel was competent, and consoling the defendant in his own tender way: "Well, that's just too daggum bad." 601 A.2d at 591. This court remanded for a hearing because the trial court had failed to pursue the proper inquiry and because there was no record as to whether or not the defendant's pretrial claim of ineffective assistance was meritorious. *Id.* at 592. The facts in *Nelson,* a remand case, were similar to those in *Farrell,* an outright reversal, where the trial court "conducted no inquiry into the matter." *Farrell,* 391 A.2d at 761. *Farrell* is distinguishable on the facts, however, because the defendant proceeded to trial *pro se* and thus implicitly was prejudiced by the court's failure to appoint new counsel.

Two other cases indicate that this court is inclined to reverse, rather than remand, when counsel's pretrial ineffectiveness is clear. In *Pierce v. United States,* 402 A.2d 1237 (D.C.1979), a murder case, the defendant requested a continuance two weeks before trial so the court could appoint an additional, more experienced, counsel. 402

A.2d at 1238. At that time, in open court with his client present, defense counsel supported the defendant's request. After a lengthy colloquy in which it became apparent that counsel had done quite a bit to prepare for trial, counsel asked for a one week continuance on the motion, which was granted. A week later, however, when his client was not present, counsel withdrew the request for appointment of co-counsel. *Id.* at 1238–42. This court reversed and remanded for a new trial, concluding that the trial court had failed to make any inquiry of the defendant and had failed to question counsel about his murder trial experience—the central issue in the defendant's "complaint"—as required under *Monroe* and *Farrell. Id.* at 1245.

In *Lewis v. United States,* 446 A.2d 837 (D.C.1982), appellant requested at the plea hearing that his plea be withdrawn, asserting that counsel had lied to him about the availability of defenses. Counsel argued that appellant should be allowed to withdraw his plea and moved to withdraw as appellant's counsel. The trial court denied both motions. *Id.* at 840–41. This court reversed and remanded for appointment of a new attorney for appellant's motion to withdraw his plea, citing cases on lawyer-client conflicts as well as *Monroe* and *Farrell. Id.* at 843.

 The lesson to be drawn from these cases is that when a defendant requests new counsel, based on pretrial ineffectiveness, several weeks before trial, and the trial court conducts no inquiry, this court will remand for findings on the issue (*Bass; Matthews* ). The court will also remand when the defendant has made a pretrial request for new counsel immediately before trial but no inquiry has been made, and thus there is no basis on which to determine whether the claim may have merit (*Nelson* ). On the other hand, if "there is sufficient evidence on the record to sustain the ruling of the trial court in spite of the court's failure to make a proper inquiry before ruling," *Monroe,* 389 A.2d at 823, this court will affirm. We will reverse outright, however, when there is obvious prejudice (*Farrell* ) or when the

trial court's conclusions are unsupported by the pretrial record (*Pierce*). This court tends to err, if at all, on the side of reversal, rather than remand, in order to provide incentive for thorough pretrial *Monroe–Farrell* inquiries and to avoid prolonging appeals.[11]

Reversal is warranted in the instant case because the record reveals both that the type of inquiry contemplated by *Monroe* did not occur, *see supra* Part IIB, and that there was inadequate trial preparation and consultation by counsel. Although the trial judge's inquiry into appellant's complaint of ineffective assistance of counsel was limited in scope, there was sufficient information for the judge to determine "any concrete steps taken by counsel in preparation of the case and to evaluate their sufficiency under the circumstances." *Monroe*, 389 A.2d at 819. Furthermore, trial counsel had failed to confer fully with appellant and had admitted earlier in the proceedings that he had not investigated the case, legally or factually, and that he had not located or ascertained the witnesses, having recognized that it would be difficult to do so because of appellant's incarceration. Counsel also represented that the case was a difficult one that required many tactical choices and that he had not determined the theory or defenses as of the scheduled trial date. Although counsel stated that if compelled to do so, he could probably be ready for trial the next day, counsel's representations do not demonstrate the type of pretrial investigation " 'both factual and legal, and ... allow[ing] enough time for reflection and preparation for trial' " that is within the range of competence required of an

attorney in a criminal case. *Bass*, 580 A.2d at 671 (quoting *Robinson v. United States*, 565 A.2d 964, 968 (D.C.1989)); *Matthews*, 459 A.2d at 1065. Despite these representations by both appellant and his trial counsel, the trial judge cut short his inquiry and in effect stated that appellant was responsible for the defense's inadequate pretrial preparedness. There were, however, "[insufficient] facts of record to support this statement." *Pierce*, 402 A.2d at 1245.

Accordingly, because the pretrial record shows that appellant did not have representation "by an attorney who was prepared within the normal range of reasonable competence demanded of attorneys in criminal cases," *Matthews*, 459 A.2d at 1066; *see Monroe*, 389 A.2d at 819, 822, we reverse the judgments of conviction.

---

11. Another recent case, calling for remand in the special circumstance of a presentencing ineffectiveness of counsel complaint, is not inconsistent with a policy of outright reversal unless it is unclear whether counsel has effectively prepared or not. In *Johnson v. United States*, 585 A.2d 766 (D.C.1991), the court applied the *Monroe* analysis to a situation where the appellant raised his dissatisfaction with counsel at the sentencing stage. The court said:

The usual remedy when a defendant successfully claims on appeal that the trial court failed to conduct a required *Monroe/Farrell* inquiry is to remand for a hearing to determine whether appellant received effective assistance of counsel. *See, e.g., Matthews v. United States*, 459 A.2d 1063 (D.C.1983). As indicated in *Bass v. United States*, 580 A.2d 669, 671 (D.C.1990), however, "*Matthews* teaches that either a remand or reversal may be the appropriate remedy, depending on the circumstances of each case." Given the unusual circumstances in this case [issue raised at the sentencing stage], a remand for a *nunc pro tunc Monroe/Farrell*-type hearing may well be inappropriate.

*Id.* at 771. The court therefore remanded for a hearing on the appellant's motion for a new trial and, if denied, for a hearing on the adequacy of sentencing counsel.