Louia A. McKENZIE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 93–CF–1340 & 94–CO–1250.

District of Columbia Court of Appeals.

Argued Feb. 2, 1995.

Decided June 12, 1995.

---

Carol Garfiel Freeman, appointed by this court, Rockville, MD, for appellant.

Geoffrey G. Bestor, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese III, Joan A. Draper and Richard L. Chamovitz, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and TAYLOR,[*] Associate Judge of the Superior Court of the District of Columbia.

STEADMAN, Associate Judge:

Appellant McKenzie was convicted of armed robbery and related offenses at a bench trial at which a coparticipant in the charged events, Ronald C. Jenkins, was a principal government witness.[1] On appeal, McKenzie argues: 1) the trial court made an inadequate inquiry into his pretrial complaint about his appointed counsel, and 2) in its determination of Jenkins's credibility, the trial court improperly took into account a statement made by Jenkins at the time of his arrest, which was referred to at trial but not introduced into evidence in full text. We affirm.

## I.

■■■ On August 8, 1991, while awaiting trial, appellant sent a letter to the trial court complaining about his attorney, Melvin Dildine.[2] Under our case law, such a complaint triggered what is commonly referred to as a *"Monroe–Farrell"* inquiry. *See Monroe v. United States*, 389 A.2d 811, 820–21 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978) (when a defendant makes a pre-trial challenge to the effectiveness of counsel, the court must at that time conduct an on-the-record inquiry sufficient to determine the truth and scope of the defendant's allegations); *Farrell v. United States*, 391 A.2d 755, 760–62 (D.C.1978). Accordingly, at a hearing on October 7, 1991, the following interchange occurred between the motions judge, the Honorable Truman A. Morrison III, and McKenzie:

THE COURT: Good morning, Mr. McKenzie. You wrote to Judge King, I've taken over Judge King's cases, you wrote to Judge King earlier this summer and wrote him a letter—asking him if he could give [you] another lawyer. Is that still your request in this case?

DEFENDANT McKENZIE: Well, since then, things have—better. So, I'll stick—see what—how things turn out.

THE COURT: Well—

DEFENDANT McKENZIE: I've got to make that decision, right now?

THE COURT: Well, you don't have to make it right now, but you can't wait until we get close to the trial. In other words, we have to have this—it's a co-defendant case. And, so—

DEFENDANT McKENZIE: I understand.

THE COURT: If you have any complaints, you have [to] make them in the next week or two.—but for now you want to keep Mr. Dildine? Okay.

No further complaints of any kind were made by McKenzie to the court about his counsel[3] until, following Mr. Dildine's death, successor counsel filed a post-verdict motion for a new trial,[4] alleging an inadequate *Mon-*

---

[*] Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

[1] Jenkins testified for the government as a result of a plea bargain.

[2] Appellant supplemented this letter with a *pro se* "Motion Requesting Withdrawal of Counsel" filed on August 23, 1991. In his letter, appellant simply complained that counsel "has not performed his duties on behalf of my interest" and "has jeopardized my case totally therefore implying irresponsible duties." In the motion, appellant complained that there had been little contact between his attorney and himself, and that counsel had not adequately prepared to present a viable defense, because he had failed to investigate the case to its fullest.

[3] McKenzie subsequently appeared before the trial court on several occasions pretrial, as well as at the trial itself.

[4] The motion was filed well beyond the requisite seven days limitation for filing new trial motions after the rendering of a verdict, Super.Ct.Crim.R. 33, and thus presented a potential jurisdictional problem. *See Junior v. United States*, 634 A.2d

roe–Farrell inquiry into his pretrial claim of dissatisfaction with counsel and also alleging ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). After a two-day hearing, the Honorable Zinora Mitchell–Rankin, who had also been the judge at the bench trial, denied the motion with respect to both assertions.[5]

We agree that given the response of McKenzie at the pretrial hearing and the absence of any subsequent complaint, no further Monroe–Farrell inquiry was required at that hearing or subsequently. Judge Morrison, who engaged in first-hand inquiry with McKenzie, could fairly construe the exchange as an indication that McKenzie was at that point satisfied with his counsel.[6] When a defendant makes complaints that might trigger a full Monroe–Farrell inquiry, but later tells the court that he is now satisfied with his counsel or no longer desires new counsel, the court need not continue further into the matter. See Robinson v. United States, 565 A.2d 964, 969 (D.C.1989) (holding that court did not err in failing to conduct Monroe–Farrell inquiry, where appellant had made many requests for new attorney but when court asked appellant to state the basis for desire for a new attorney, "appellant himself concluded that he was ready and willing to go forward with his present attorney"); Gordon v. United States, 582 A.2d 944, 946 (D.C. 1990) (judge did not err in failing to ask questions of defense counsel when, after judge addressed appellant's problems and

questions, appellant said she wanted to go to trial and would keep her defense attorney; "appellant's complaints provided no basis for the judge to inquire further into the attorney-client relationship or about defense counsel's preparation for trial"). McKenzie both by his letter and his pro se motion had shown that he was not hesitant to register dissatisfaction with counsel and knew how to do so.[7]

■ The scope of a Monroe–Farrell inquiry is left to the sound discretion of the trial court. Garrett v. United States, 642 A.2d 1312, 1314 n. 1 (D.C.1994). This is not a case where the Monroe–Farrell inquiry itself may have been flawed or inadequate, but rather a case where defendant's representations dictated that a further Monroe–Farrell inquiry was no longer mandated. We are satisfied that the trial court here did all that was required in the circumstances and appropriately halted the inquiry in light of the response of McKenzie.

## II.

■ At the bench trial, evidence was introduced without objection that upon his arrest, coparticipant Jenkins made a statement to the police which identified McKenzie as one of the accomplices in the crime and contained a "fairly lengthy" account about what happened. However, the statement itself or other specific information about its contents was not introduced.

411, 417–18 (D.C.1993). Accordingly, by joint agreement of appellant and the government while the direct appeal was pending before this court, appellant filed a motion under D.C.Code § 23–110 renewing the claims made in the post-verdict motion and asking the trial court to decide the motion on the basis of the record created on the earlier motion, and on the grounds previously specified. This was done, and appellant then took an appeal from the denial of the motion, which was consolidated with the direct appeal.

**5.** Judge Mitchell–Rankin found, by written opinion, that neither prong of Strickland had been met, on grounds with which we substantially agree. Accordingly, we affirm that determination. We do not consider for the first time on this appeal those asserted instances of alleged ineffectiveness which were not presented to the trial court at the hearing. See Young v. United

States, 639 A.2d 92, 97 n. 8 (D.C.1994). This ruling, however, is not determinative on the Monroe–Farrell issue. See McFadden v. United States, 614 A.2d 11 (D.C.1992) (holding that this court must ensure that a Monroe–Farrell claim has been definitively resolved before dealing with the Strickland inquiry).

**6.** As the Supreme Court has pointed out, "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

**7.** Indeed, any attempt by the court in such circumstances to inquire further into the attorney-client relationship might have been considered inappropriate trial court intrusion.

■ In closing argument to the trial court, the prosecutor argued that the post-arrest identification, along with the fact that Jenkins made a detailed statement, corroborated Jenkins's story at trial and rebutted any claim of recent fabrication. The court in rendering its opinion set forth the many reasons why it credited Jenkins's testimony, including an observation that while the specific contents of the statement were not in evidence, "this Court, I believe, can make a reasonable inference that had there been any inconsistencies of any import, that they would have been raised in connection with Mr. Jenkins' testimony and they were not." Appellant never interposed any objection to the argument by the prosecutor or the observation by the trial court, either at the time or in his motion for a new trial.[8] Accordingly, we review for plain error; that is, an error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 449 A.2d 308, 314 (D.C.1982).

■ Appellant relies on *Reichert v. United States*, 123 U.S.App.D.C. 294, 297–298, 359 F.2d 278 (1966), and *Johnson v. United States*, 121 U.S.App.D.C. 19, 21–22, 347 F.2d 803 (1965), in which reversible prejudice was found in prosecutorial argument based on alleged but unproven prior consistent statements by witnesses, and which cautioned that pretrial statements furnished under the *Jencks* Act should be delivered outside the presence of the jury to avoid any unwarranted reliance by a jury on a presumed prior consistent statement.[9] However, in those cases, even the very fact of the existence of the statement, much less its general content, had not been formally put into evidence. Therefore, the statement should not have been considered in any way.

■ Here, to the contrary, the existence of the statement and its content insofar as it included an identification of McKenzie and a "fairly lengthy" account of the incident were in evidence, without objection, and indeed certain contents of the statement had been used by defense counsel to try to impeach Jenkins about the amount he had drunk on the day of the crime.[10] The statement itself could clearly have been used by defense counsel to impeach Jenkins had it contained other impeaching material, *Martin v. United States*, 452 A.2d 360, 363 (D.C.1982), and, as counsel acknowledged at oral argument, appellant presumably had a copy of the statement under the *Jencks* requirement. See Super.Ct.Crim.R. 26.2. This was a bench trial in which the trial court may be presumed not to make improper use of evidence. *Johnson v. United States*, 636 A.2d 978, 981 (D.C.1994). In any event, the observation with respect to the prior statement was only one of a number of grounds given for crediting Jenkins's testimony. The trial court found appellant's contrary testimony to be "completely incredible." In sum, given the totality of the circumstances, we fail to see how the trial court committed plain error, if error at all, in making the common-sense observation that it did.

*Affirmed.*

---

**8.** Included among the catalogue of alleged trial counsel deficiencies raised for the first time on appeal, see note 5, *supra*, is the complaint that "he raised no objection when the trial judge relied on this confession to corroborate Jenkins' testimony."

**9.** Under our case law, prior consistent statements may not be introduced to support one's own unimpeached witnesses. *Johnson, supra*, 121 U.S.App.D.C. at 22, 347 F.2d at 805–06. Prior consistent statements are admissible to rebut charges of recent fabrication, *Mitchell v. United States*, 569 A.2d 177, 185 n. 20 (D.C.), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990), but only if such a statement was made before the witness/declarant had a

motive to lie. *Tome v. United States*, —— U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). However, "the objection to the introduction of prior consistent statements is at bottom based on the principle of irrelevance ... [t]herefore, the harm that may occur even if the jury should draw such an inference is less serious than the inadmissible introduction of clearly prejudicial evidence." *Jordan v. United States*, 633 A.2d 373, 377 (D.C.1993).

**10.** Jenkins testified that he had drunk several cans of beer with Raymond Cheadle, a coparticipant in the crime, but the statement he had given to police said he had drunk a pint of gin before he and Cheadle even met McKenzie that day.