**James L. FORTE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 97–CF–1682, 02–CO–998.**

District of Columbia Court of Appeals.

Argued Sept. 10, 2003.
Decided July 22, 2004.

---

Walter S. Booth, Bethesda, MD, appointed by the court, for appellant.

John P. Mannarino, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney at the time, and John R. Fisher, Barbara J. Valliere and Margaret A. Carroll, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and STEADMAN, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:[1]

After a jury trial, appellant, James Forte, was convicted of one count of rob- bery of a senior citizen.[2] While his appeal from that conviction was pending, appellant filed in the trial court a motion to vacate his conviction under D.C.Code § 23–110 (2001), asserting ineffective assistance of counsel. The court denied the motion without a hearing. Appellant's appeal from that denial was consolidated with his appeal from the conviction.

Before this court, appellant makes three arguments. First, he contends that the trial court erred in denying his motion to suppress a showup identification. Second, he claims that the trial court did not conduct a proper *Monroe–Farrell*[3] inquiry into his pre-trial claim of ineffective assistance of counsel. Finally, he maintains that the court erred in denying his § 23– 110 motion without a hearing. We reject appellant's first contention and uphold the denial of his motion to suppress. We also hold the trial court conducted an adequate pre-trial inquiry under *Monroe–Farrell* and did not abuse its discretion in denying appellant's § 23–110 motion alleging ineffective assistance of counsel.

I.

A. *The Robbery*

Shortly after 8:30 p.m. on January 12, 1997, while working as a part-time security guard at the Days Inn motel on New York Avenue, N.E., Sergeant Brian Hubbard of the Metropolitan Police was told by a man who came into the motel lobby that his father was being "killed" just outside in the parking lot.[4] Hubbard immediately

---

1. Parts I and II were authored by Judge Terry. Parts III, IV, and V were authored by Judge Steadman.

2. D.C.Code §§ 22–2901 and 22–3901(a) (1996), recodified as D.C.Code §§ 22–2801 and –3601(a) (2001), respectively.

3. *See Monroe v. United States*, 389 A.2d 811 (D.C.1978); *Farrell v. United States*, 391 A.2d 755 (D.C.1978), and subsequent cases.

4. The man who made the report was Michael McAvoy. He described the robber as "wearing a black leather coat and blue jeans and a black hat."

went out to investigate and found that Ralph McAvoy had just been robbed, but not killed. After speaking briefly with Mr. McAvoy, Sergeant Hubbard went back into the lobby and telephoned the police dispatcher to report what had happened. He also repeated the description of the robber that Michael McAvoy had given him and said that the robber had been last seen "running across New York Avenue toward the Master Host Inn," another nearby motel.

While Sergeant Hubbard was still on the phone, he was approached by Michael Daughtery, who had also had an encounter with the robber. Mr. Daughtery had been talking on a pay phone at a Mobil gas station next to the Days Inn when he was approached by a man who asked him for money. After turning him down, Mr. Daughtery saw the man go up to Mr. McAvoy, who was pumping gas into his car a short distance away. They had a brief conversation, and then the man got into Mr. McAvoy's car, which pulled out of the gas station and headed for the Days Inn. Then Mr. Daughtery heard "screaming," and when he looked toward the Days Inn, he saw the man jump out of Mr. McAvoy's car and run across New York Avenue toward the Master Host Inn.[5] Although Mr. Daughtery did not witness the actual robbery, he gave Sergeant Hubbard a description of the man he had seen, noting that he had been wearing "a brown leather snakeskin-type jacket ... blue jeans and a black hat." Sergeant Hubbard relayed this description to the police dispatcher and then began to canvass the area with Mr. Daughtery.

About ten minutes later, Sergeant Hubbard stopped appellant near the intersection of New York and Montana Avenues. Appellant was the only person on New York Avenue, and Mr. Daughtery identified him as the man he had seen earlier. After patting him down for weapons, Sergeant Hubbard handcuffed appellant and brought him back to the Days Inn for a showup identification.

While Sergeant Hubbard was out looking for the robber, Officer William Hawkins had arrived at the Days Inn and begun to interview Mr. McAvoy. McAvoy told the officer that he had agreed to give a man a ride back to the Days Inn from a nearby gas station, and that the man robbed him when they reached the Days Inn. At that point, Sergeant Hubbard returned with appellant in custody. Officer Hawkins then asked Mr. McAvoy, "Is this the man that robbed you?" Mr. McAvoy responded, "Yes, that's—that's definitely him." Appellant was thereupon placed under arrest.[6]

## B. The Monroe–Farrell Letter

In May 1997, while the case was awaiting trial, appellant wrote a letter to the

---

5. Mr. McAvoy later testified that he and his family had just arrived in the District of Columbia for a short visit. After dropping off his wife and son at the Days Inn, he drove alone to the Mobil station next door to buy gas. After he had put the gas in his car and paid for it, he was approached by a man—whom he identified as appellant—who asked him for a ride to the Days Inn. At first he declined, but when appellant commented on how cold it was, Mr. McAvoy felt sorry for him and let him get into his car. When they arrived at the Days Inn, however, appellant did not get out but instead climbed between Mr. McAvoy and the steering wheel. Sitting on Mr. McAvoy's lap and facing him, appellant threatened to "stick" him with a knife (which Mr. McAvoy never actually saw) and eventually managed to take Mr. McAvoy's wallet. Appellant then fled across New York Avenue. Mr. McAvoy shouted for help, and his wife and son came out of their hotel room.

6. In a search after arrest, a $50 bill and two $20 bills were found on appellant. These were the exact denominations of the bills in McAvoy's stolen wallet.

trial judge complaining about his lawyer, an attorney with the Public Defender Service. Appellant's letter stated:

My concern is that I have been in jail ever since January 13, 1997 and my lawyer ... hasn't yet been to see me, nor has he given me any information concerning my case, and I've been on the back burner ever since. Nonetheless, I don't feel that he's handling his responsibility as a lawyer, and I would like to have him withdrawn from my case, your honor, I don't want to sit over here at this jail awaiting another (100) hundred days, I am asking you to either pull him up of [*sic*] his awareness, or remove him from my case. I certainly would like to have some one who's willing to show better concerns.

When the case came to trial almost two and a half months later, before jury selection began, the prosecutor brought appellant's letter to the court's attention. The following exchange then took place between the court and appellant:

THE COURT: Are you satisfied with the services of your attorney?

THE DEFENDANT: Can I speak to him for five minutes recess, your honor?

THE COURT: Yes.

After the recess and a break for lunch, the court read aloud portions of appellant's letter and remarked that counsel was "among the busiest lawyers at the Public Defender Service [and] was in trial a significant part of the spring." The court, defense counsel, and appellant then engaged in the following dialogue:

THE COURT: [Counsel], did you— did I furnish you with a copy of your client's letter?

[DEFENSE COUNSEL]: Yes, your honor.... I had received a copy of the letter. In response I saw my client. I also wrote him a letter addressing some of his concerns. We had a long conver-

sation. I believe at that time that my client was satisfied with my representation.

I want the court to be clear on this particular matter. I had related to my client the latest telephone offer from the government. My client was concerned that in relating the plea offers that I was in fact saying I had no confidence in his case and suggesting that perhaps I was not interested in representing him as, of course, I am....

THE COURT: Mr. Forte, I don't mean to be rude, but we are not dealing with a child here. He is well aware of the criminal justice system and the lawyer's role in the system. Mr. Forte, are you trying to abuse your attorney, because he has a young face?

THE DEFENDANT: No, sir. Certainly not.

THE COURT: Please, you know doggone well it is [his] professional duty to bring to you plea offers. So let's not play that game. Okay, sir?

THE DEFENDANT: Yes, sir.

Following this exchange, the court returned to this issue at a subsequent bench conference. After commenting that it "didn't make the standard *Monroe–Farrell* inquiry," the court then asked counsel: "Was there anything else... something about your investigation, of course you had an investigator." After counsel affirmed that he had hired an investigator for appellant's case, the court asked, "have you discussed ... about your investigators?" Counsel replied that he had given appellant a complete copy of the case file. The trial court asked if there was "anything else;" defense counsel said, "I don't believe that there are any *Monroe–Farrell* issues."

## C. *The § 23–110 Motion*

While appellant's direct appeal from the robbery conviction was pending, appellant

filed a *pro se* motion with the trial court pursuant to D.C.Code § 23–110, asserting that his trial counsel had rendered ineffective assistance. Although the motion set forth thirteen alleged instances of ineffective assistance, there were only two primary claims: (1) that counsel had failed to "investigate or question" certain witnesses, and (2) that counsel had failed to exclude identification evidence. The trial court, without conducting a hearing, entered an order denying the § 23–110 motion. After outlining appellant's claims, the order stated that the motion did not meet the two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## II.

■ A defendant who moves to suppress an identification, in order to prevail on his motion, must show that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Turner v. United States,* 622 A.2d 667, 672 n. 4 (D.C.1993) (citing *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Then, "if the procedure is found impermissibly suggestive, the government may defeat the motion and save the identification by carrying the burden of producing evidence to show that, under all the circumstances, the identification was reliable nonetheless." *Maddox v. United States,* 745 A.2d 284, 292 (D.C.2000) (citing *United States v. Brown,* 700 A.2d 760, 761 (D.C.1997)); *see also Turner, supra,* 622 A.2d at 672 n. 4. On the record before us, we conclude that appellant has failed to demonstrate a "very substantial likelihood of misidentification."

■ Appellant contends that the showup was impermissibly suggestive because he was the only person brought forward, because there were two police officers around him, and because he was in handcuffs. Although single-suspect identifications in the presence of police are obviously suggestive to some extent, "a defendant is not denied due process of law unless, in the totality of the circumstances, the on-the-scene confrontation was *unnecessarily* suggestive and conducive to the substantial likelihood of irreparable misidentification." *Singletary v. United States,* 383 A.2d 1064, 1068 (D.C.1978) (emphasis added); *see also, e.g., United States v. Hunter,* 692 A.2d 1370, 1375 (D.C.1997). Appellant has not focused on any fact associated with his pre-trial identification— other than his custodial status—that would lead us to conclude that it was impermissibly suggestive. That is not enough. *See, e.g., Turner, supra,* 622 A.2d at 672 ("While a showup may not be an ideal setting for an identification, it is not sufficient alone to establish a due process violation"); *Singletary, supra,* 383 A.2d at 1068 ("something more egregious than mere custodial status is required" to establish that a showup was impermissibly suggestive). Nor does the fact that appellant was handcuffed during the showup establish impermissible suggestivity. *See, e.g., Fields v. United States,* 484 A.2d 570, 574 (D.C.1984).

■ We hold that the trial court committed no error in denying appellant's motion to suppress his identification because that decision was "supported by the evidence and in accordance with the law." *Turner, supra,* 622 A.2d at 672 n. 3; *see also, e.g., Jackson v. United States,* 623 A.2d 571, 589 (D.C.1993) (this court is bound by the trial court's decision if it was "supported by the evidence and consistent with the law"). Furthermore, because the showup here was not impermissibly suggestive, we need not even decide whether, in addition, the identification was reliable. *Hunter, supra,* 692 A.2d at 1375; *In re*

*M.A.C.,* 761 A.2d 32, 41–42 (D.C.2000), *cert. denied,* 534 U.S. 867, 122 S.Ct. 155, 151 L.Ed.2d 104 (2001).[7]

## III.

▌ Next, appellant claims that the trial court failed to conduct a proper *Monroe–Farrell* inquiry because the court did not address him on the record about his complaints.[8] This court has held that when a defendant makes a pre-trial claim of ineffective assistance of counsel, the trial court has "a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations." *Monroe, supra* note 3, 389 A.2d at 820 (citations omitted); *accord, Farrell, supra* note 3, 391 A.2d at 760–61. The nature of such inquiry is within the trial court's discretion. *Thomas v. United States,* 772 A.2d 818, 821 (D.C.2001); *see also Nelson v. United States,* 601 A.2d 582, 592 (D.C.1991). The trial court's duty here was "to elicit from counsel any information necessary to rebut or confirm" appellant's complaints of ineffectiveness without prying to a greater extent than necessary into the attorney-client relationship. *Nelson, supra,* 601 A.2d at 592;

*Monroe, supra* note 3, 389 A.2d at 820; *see also Lane v. United States,* 737 A.2d 541, 547 (D.C.1999). While "the trial court must put to defense counsel (and to the defendant, if necessary)—on the record—specific questions designed to elicit whether or not the … criteria of professional competence have been met," *Monroe, supra* note 3, 389 A.2d at 821, the court need not attempt to examine every conceivable deficiency in the representation. *See, e.g., Wingate v. United States,* 669 A.2d 1275, 1281 (D.C.1995). "[T]he substance of the complaints about counsel's performance governs the nature of the mandated inquiry." *Id.* "Once it has addressed the defendant's specific complaints, the court has 'no basis … to inquire further into the attorney-client relationship or about defense counsel's preparation for trial.'" *Lane, supra,* 737 A.2d at 547 (quoting *Gordon v. United States,* 582 A.2d 944, 946 (D.C. 1990)).

▌ Albeit in a piecemeal fashion, the trial court addressed the concerns raised in appellant's letter.[9] We hold, therefore, that the trial court complied with the requirements of *Monroe* and *Farrell* and

---

7. We emphasize, however, that reliability arguments must be focused on the person who actually made the pre-trial identification and on whether *that* person's identification was reliable. *See, e.g., In re M.A.C., supra,* 761 A.2d at 39–42; *Black v. United States,* 755 A.2d 1005, 1008 (D.C.2000). Appellant contends that the varying descriptions of the suspect's clothing given to the police by Michael McAvoy and Michael Daughtery show that the identification was unreliable. While it is true that there were such varying descriptions, they were not given by Ralph McAvoy, the person who made the actual identification. Thus, even if the reliability of the identification were at issue, appellant's argument would be irrelevant. What matters in this context is the identification itself, not the vari-

ations, if any, in descriptions given by other non-identifying witnesses.

8. Appellant's letter to the court was sufficient to trigger a *Monroe–Farrell* inquiry. *See Bass v. United States,* 580 A.2d 669, 671 (D.C. 1990).

9. Error cannot be extrapolated from the trial court's statement that it "didn't make the standard *Monroe–Farrell* inquiry." Even if the trial court's inquiry was not "standard" it was not necessarily insufficient. Indeed, following the statement the court inquired if there were other *Monroe–Farrell* issues, focusing on counsel's investigation. The trial court's return to the *Monroe–Farrell* issue through its statement demonstrates a concern by the court that it address appellant's complaints.

conducted a sufficient inquiry in response to appellant's specific complaints.

Appellant's letter to the trial court averred that his attorney had not visited him nor provided him with "any information concerning [his] case." Its thrust thus was that counsel's failure to communicate with appellant indicated a lack of concern about the case. Addressing that complaint, the court asked counsel whether he had a copy of the letter. In response, counsel said, "I had received a copy of the letter. I saw my client. I also wrote him a letter addressing some of his concerns. We had a long conversation. I believe at that time that my client was satisfied with my representation."[10] Later, the court returned to appellant's letter,[11] specifically citing counsel's investigation and asking if counsel had discussed his investigation. Counsel indicated that he had hired an investigator and had provided appellant a copy of the case file. By revealing that in response to appellant's letter counsel visited appellant, wrote him a letter and conversed at length with him regarding his case and concerns, explained to appellant the plea process, and provided him a copy of the case file, the dialogue between the trial court and counsel sufficiently addressed appellant's complaints regarding visitation by counsel, being provided information by counsel, and counsel's general concern with the case. Notwithstanding

the brevity of the inquiry, the trial court did not abuse its discretion in finding that counsel had responded to appellant's specific allegations in the letter.

 Although it might well have been a prudent additional step in the circumstances, the trial court was not mandated to question directly the appellant regarding his complaints about the ineffectiveness of his counsel in its *Monroe–Farrell* inquiry. We have required the trial court to question defense counsel "and... the defendant, *if necessary*," in order to determine if the "criteria of professional competence have been met." *Monroe, supra* note 3, 389 A.2d at 821 (emphasis added). Direct inquiry of the defendant may be "necessary" when "the record is devoid of the defendant's views" regarding any alleged ineffectiveness. *See Pierce, supra* note 11, 402 A.2d at 1244 (holding that where defense counsel, not the defendant, expressed concerns to the trial about his ability to present the case, the trial court was obliged to question the defendant so that his views would become part of the record). However, in this case, appellant himself had presented his complaints to the trial court in a written letter, such that his views triggering the inquiry *were* preserved in the record. Where trial counsel, as an officer of the court, makes factual assertions in response to trial court

10. Trial counsel also commendably brought up sua sponte another possible concern of appellant's (never expressed by appellant himself) relating to the communication of the plea offer. The possible concern was expressed in the past tense and the trial court correctly noted the obligation on trial counsel to convey all plea offers. We note that in the § 23–110 motion, appellant makes no complaint about this aspect of trial counsel's representation.

11. The second portion of the *Monroe–Farrell* inquiry in this case took place during an unrelated bench conference outside the defen-

dant's presence. While we discourage such practice, *Pierce v. United States*, 402 A.2d 1237, 1245 n. 8 (D.C.1979), it did not render the court's inquiry insufficient where a significant portion of the inquiry took place in the defendant's presence, where the defendant was given an opportunity to address the court regarding his complaints, and where defense counsel demonstrated he had responded to appellant's concerns. *Cf. Lane, supra,* 737 A.2d at 547 (where trial court "obtained during [an] ex parte bench conference [with counsel] all the information it needed to rule on the ineffectiveness claim").

inquiry, there is no requirement that the trial court test such assertions against the defendant personally, at least absent any indication raising significant question as to the accuracy of such assertions. Moreover, although a defendant's assertion that "he is now satisfied with his counsel or no longer desires new counsel" justifies termination of the *Monroe–Farrell* inquiry, *McKenzie v. United States*, 659 A.2d 838, 840 (D.C.1995), the fact that the trial court never elicited a response from appellant as to whether he was "satisfied" with his counsel is not conclusive.[12] A *Monroe–Farrell* inquiry in response to specific allegations of deficiency seeks to ensure, with respect to a specific complaint of a defendant, that the "criteria of professional competence have been met," *Monroe, supra* note 3, 389 A.2d at 821. A defendant's "satisfaction" is relevant to that determination only to the extent that any discontentment is tied to articulated claims of ineffectiveness. *See id.* (there is no "formularized series of questions which trial judges must mechanically recite").[13]

The trial court here was addressing a complaint by the appellant expressed several months previously and based upon a lack of contact between appellant and his trial counsel. The trial court ascertained that in fact this state of affairs had been rectified, trial counsel had consulted with appellant, had engaged in an investigation of the case, and had provided the results of that investigation to the appellant. At the hearing or otherwise, appellant did not renew his stale complaint of dissatisfaction or otherwise suggest that those matters had not been rectified. We simply cannot say that the trial court abused its discretion in closing its inquiry at that point.

## IV.

 Appellant's final claim is that the trial court erred in denying his § 23–110 motion to vacate for ineffective assistance of counsel without a hearing. We review such a claim under the familiar standard of *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. 2052. The defendant must demonstrate both that counsel's performance was deficient and that such deficient performance prejudiced the defense. Prejudice exists where the appellant establishes by a "reasonable probability that, but for his trial attorney's deficient performance, the outcome of the case would have been different." *Dobson v. United States,* 711 A.2d 78, 83 (D.C.1998) (quoting *Strickland, supra,* 466 U.S. at 693, 104 S.Ct. 2052). "Whether to hold a hearing is a matter committed to the sound discretion of the trial court." *Lopez v. United States,* 801 A.2d 39, 42 (D.C.2002).

 Appellant's principal claims of ineffectiveness were that counsel failed to question certain witnesses and that counsel

---

12. Upon being asked by the trial court if he was satisfied with counsel, appellant did not answer the question but asked for a five-minute recess to speak with his counsel. If anything, responding to the court's question by requesting to confer with counsel leaves the impression that appellant was, in fact, satisfied with his counsel. It is difficult to fathom the contrary: that a defendant who is dissatisfied with his attorney and is given an opportunity to express such dissatisfaction to the court, would instead opt to seek the advice of the very attorney with whom he is dissatisfied. Such satisfaction, if so inferable, would obviate the need for further inquiry. *See McKenzie, supra,* 659 A.2d at 840. However, we need not rely upon any such inference here, where appellant's concerns were sufficiently addressed.

13. The fact that a defendant has expressed dissatisfaction with appointed trial counsel does not ipso facto entitle him to substitute counsel, absent a showing of ineffectiveness or other disqualifying factor. *See, e.g., Johnson v. United States,* 585 A.2d 766, 770–71 (D.C.1991).

was deficient in his treatment of identification evidence. As to the first of these allegations, appellant provided the trial court with no information regarding the identity of such witnesses or the possible content of any testimony they might give. While demonstration of the failure to investigate and call witnesses can establish ineffective assistance of counsel, *Gray v. United States*, 617 A.2d 521, 524 n. 8 (D.C. 1992), we have "required 'an affidavit or other credible proffer as to the allegedly exculpatory nature of [the prospective witnesses'] testimony.'" *Lopez, supra*, 801 A.2d at 42 (citation omitted). Without such a proffer, the trial court did not abuse its discretion in denying appellant's motion alleging ineffective assistance of counsel for failure to investigate unnamed witnesses with unspecified testimony.[14]

 Appellant's claim of deficiency with regard to identification evidence is also without merit. The allegation that defense counsel did not attempt to exclude or "attack" identification evidence is belied by the record. Counsel did, in fact, move to suppress the showup identification, which is now a subject in this appeal. Moreover, counsel cross-examined both Mr. McAvoy and Sergeant Hubbard regarding the identification and description of the appellant. On this ground, therefore, appellant did not establish deficient performance by counsel.[15]

### V.

We hold that the trial court did not err in denying appellant's motion to suppress the showup identification. The trial court did not abuse its discretion either in conducting its *Monroe–Farrell* inquiry in response to appellant's pre-trial complaints about his counsel or in denying, without a hearing, appellant's post-trial § 23–110 motion. Appellant's conviction and the trial court's denial of his motion to vacate under § 23–110 are therefore

### *Affirmed.*

TERRY, Associate Judge, dissenting in part: I agree that the motion to suppress identification was properly denied; on that point this court is unanimous. I part company with my colleagues, however, on the *Monroe–Farrell* issue. In my view, the trial judge did not conduct a sufficient inquiry when the prosecutor, just before the trial began, reminded him of the pending letter from appellant complaining about defense counsel. I would therefore remand the record for further proceedings on the *Monroe–Farrell* claim, including such factual findings as may be appropriate.

14. This current assertion of appellant that trial counsel had "ignored" exculpatory witnesses, a mixture of pre-and mid-trial competence, was nowhere raised by appellant before the trial court, even as part of the *Monroe–Farrell* inquiry into his then three-months old complaint. Moreover, even now, neither in his post-trial motion or in his appeal of the denial of that motion to us, represented by counsel, does he present a claim that in its detail is viable on its face.

15. Appellant's additional claims of ineffectiveness included counsel's failure "to raise the issues concerning the second indictment" and "double enhancement" in his sentencing. In conjunction with the former allegation appellant failed to articulate any specific deficiency or resulting prejudice, and the latter is without merit under the sentencing provisions of D.C.Code §§ 22–2801, –3601, –1804a (2001) where appellant had five previous convictions for burglary. Such claims of ineffective assistance were therefore properly denied. *See Joyner v. United States*, 818 A.2d 166, 174 (D.C.2003) ("[N]o hearing is required where defendant's motion 'consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true.'") (citation omitted).

My colleagues correctly state that when a defendant presents a pre-trial claim of ineffective assistance of counsel, "the trial court has a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations." *Monroe v. United States,* 389 A.2d 811, 820 (D.C.1978) (citations omitted); *accord, Farrell v. United States,* 391 A.2d 755, 760–761 (D.C.1978). Although "the exact nature of the inquiry is within the trial court's discretion," *Nelson v. United States,* 601 A.2d 582, 592 (D.C.1991), "the trial court must put to defense counsel (and to the defendant, if necessary)—*on the record*—specific questions designed to elicit whether or not the ... criteria of professional competence have been met." *Monroe,* 389 A.2d at 821 (emphasis in original). The judge in this case did not do that; indeed, he admitted on the record that he "didn't make the standard *Monroe–Farrell* inquiry." I would hold that, on the present record, this admitted failure to comply with the requirements of *Monroe* and *Farrell* was error which now requires a remand.

I reach this conclusion for two reasons. First, the court did not properly question appellant. When the court asked appellant if he was satisfied with counsel, appellant did not answer the court's question; instead, he responded by asking for a five-minute recess to speak with his counsel. After the recess, the court failed to ask appellant for an answer to its earlier question, as the case law required it to do. *See Monroe,* 389 A.2d at 821 ("the trial court must put ... to the defendant, if necessary ... specific questions"). Although there is no "formularized series of questions which trial judges must mechanically recite," *id.,*

I believe that the trial court in this case had a duty to follow up with appellant in order to determine whether he was satisfied with his counsel's performance. *Compare Wingate v. United States,* 669 A.2d 1275, 1284–1285 (D.C.1995) (trial court properly addressed appellant's complaints because it "followed up on each of appellant's assertions" and gave him opportunities to state his complaints). Nor did the court give appellant a chance to state that he no longer wanted a new attorney. Had that been done, this might well be a different case. *See McKenzie v. United States,* 659 A.2d 838, 840 (D.C.1995) ("When a defendant ... later tells the court that he is now satisfied with his counsel or no longer desires new counsel, the court need not continue further into the matter" (citations omitted)).

Second, the court did not question defense counsel about the specific complaints set forth in appellant's letter. *See Nelson,* 601 A.2d at 592 (trial court has a duty "to elicit from counsel any information necessary to rebut or confirm" a defendant's complaint). The only question that the court posed to counsel was whether he had a copy of the letter.[1] In response to that question, counsel said, "I had received a copy of the letter. I saw my client. I also wrote him a letter addressing some of his concerns. We had a long conversation. I believe at that time that my client was satisfied with my representation." Counsel further stated that appellant's complaints were related to the plea offers that he had relayed to appellant. But these remarks had nothing to do with the matters raised in appellant's letter. That letter stated that counsel had failed to meet

[1] At the end of the pre-trial proceeding, the court did ask counsel if he had hired an investigator. Counsel responded that he had and that appellant had a copy of the file. The court's question, however, was not "tailored to carefully explore the specifics of appellant's [letter]"; indeed, the letter did not even mention an investigator. *See Wingate,* 669 A.2d at 1284.

with him and provide him with information about his case for nearly four months while he was in jail. Counsel's remarks were simply not responsive to appellant's complaints, and the court did not follow through to make sure that appellant's concerns were addressed. Also, contrary to counsel's statement, appellant's letter did not indicate that plea offers were an issue. On this record I would hold that the trial court did not meet its "obligation to question defense counsel directly, on the record, about the specifics of [appellant's] complaint." *Nelson,* 601 A.2d at 592; *see Monroe,* 389 A.2d at 821.

"[W]hen a defendant requests new counsel, based on pretrial ineffectiveness ... and the trial court conducts no inquiry"— or an inadequate inquiry, as in this case— "this court will remand for findings on the issue." *McFadden v. United States,* 614 A.2d 11, 17 (D.C.1992) (citations omitted); *accord, Matthews v. United States,* 629 A.2d 1185, 1193 (D.C.1993) ("In the absence ... of a statement on the record by [counsel] about his pretrial preparation, neither reversal nor affirmance is warranted.... Rather, a remand is required ...." (citations omitted)). I would therefore remand the record to the trial court for further proceedings consistent with *Monroe* and *Farrell* and the later cases interpreting those two decisions.[2]

---

**2.** For this reason, I would not consider at this stage of the proceedings whether the trial court erred in denying appellant's motion under D.C.Code § 23–110 (2001), and thus I do not join in part IV of the court's opinion. Controlling case law requires us to resolve the *Monroe–Farrell* issue first. *See McFadden,* 614 A.2d at 13.